**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

VICTOR LEON-MEDEL and
JUAN DELGADO-SANCHEZ,

        Petitioners,

    v.                            No. CIV 10-0672 MV/GBW

RAY TERRY, Warden of Otero
County Immigration Detention
Facility,

        Respondent.

## PROPOSED FINDINGS AND
## RECOMMENDED DISPOSITION

THIS MATTER is before the Court on consideration of Petitioners Victor Leon-Medel and Juan Delgado-Sanchez' application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, filed July 16, 2010 (*Doc. 1*), Respondent's Motion to Dismiss filed on August 5, 2010 (*Doc. 7*), and Petitioners' Response filed August 20, 2010 (*Doc. 9*), and a telephonic status hearing held on December 2, 2010. The Court considers the Motion to Dismiss fully briefed and ready for resolution.  Accordingly, The Court considers the issues of these cases below.

## FACTUAL BACKGROUND

**Petitioner Victor Leon-Medel ("Mr. Medel"[1])**

Mr. Medel, a Mexican national, is an alien who received lawful permanent resident status on February 6, 2006. *Doc. 1* at 6; *Doc. 7*, Ex. 1. In July 2008, Mr. Medel was convicted of transporting aliens for financial gain under 8 U.S.C. § 1324, and was sentenced to eight (8) months of incarceration. *Id.* Mr. Medel completed his criminal sentence in May 2009. *Id.* On May 21, 2009, the United States Department of Homeland Security ("DHS") arrested Mr. Medel and he was taken into Immigration and Customs Enforcement ("ICE") custody for immigration proceedings. *Doc. 7*, Exs. 2 & 3. Specifically, those proceedings would determine if Mr. Medel was deportable as a criminal alien. *Id.* at Ex. 4. Because of ICE's charge that Mr. Medel was deportable as a criminal alien, he was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) until he prevailed or a final order of deportation was issued. *Id.* at Ex. 5.

The first step in Mr. Medel's immigration proceedings would be a hearing before an Immigration Judge ("IJ"). This hearing was originally scheduled for July 14, 2009, or 24 days after Medel's arrest by immigration authorities. *See Doc. 7*, Ex. 6 at 1-2. On July 14, 2009, Petitioner's counsel requested a continuance of the hearing because Petitioner was

---

[1] Mr. Leon-Medel refers to himself throughout his pleadings as "Mr. Medel" so the Court adopts this reference for him as well.

going to seek to obtain residency on the basis of his wife's United States citizenship. *FTR Donaana* 12/2/2010 at 1:36, 1:39.[2]  The first step in obtaining such relief is the filing of an I-130 application.  *Id.* at 1:38.  An I-130 application is reviewed by ICE and the key issue is whether the spousal relationship is legitimate.  *Id.*  Petitioner's counsel sought the continuance of July 14 hearing, so that the I-130 application could be filed and adjudicated. *Doc. 7*, Ex. 6 at 2; *FTR* at 1:35-36.  The IJ granted the continuance and reset the removal hearing for August 27, 2009.  *Doc. 7*, Ex. 6 at 2.  When that date arrived, Petitioner's counsel again requested a continuance because the I-130 application was still pending and Petitioner wanted to await its resolution before proceeding with the removal hearing.  *Id.*, Ex. 6 at 4.  The IJ again granted the continuance and reset the removal hearing for September 30, 2009.  *Id.*, Ex. 6 at 4-6.  On that date, Petitioner's counsel requested another continuance because the I-130 petition was still pending.  *Id.*, Ex. 6 at 6.  Consequently, the IJ granted the continuance and reset the removal hearing for November 4, 2009.  *Id.*  By the November 4, 2009, hearing, the parties and the IJ had learned that Petitioner's I-130 application had been adjudicated and ICE had determined the spousal relationship was legitimate.  *Id.*, Ex. 6 at 8; *FTR* at 1:36.  Therefore, Mr. Medel was eligible to apply for discretionary relief by filing an I-485 application with the IJ.  *FTR* at 1:38-39.  The IJ set the

---

[2] This citation shall be abbreviated "*FTR*" followed by the time hereinafter.

case for a individual hearing on November 24, 2009.[3]  *Id.*  When the parties appeared for the November 24, 2009 hearing, Petitioner's counsel requested a continuance "to allow more time to receive documents regarding Mr. Medel's federal sentence, which were essential before filing" the I-485 application.  *Doc. 9* at 5.  The IJ granted the continuance and the removal hearing was finally held on April 27, 2010, or 286 days after it was originally scheduled.  *Id.*  All but 20 days of that delay resulted from the four continuances requested by Petitioner.  On April 27, 2010, after the removal hearing, the IJ entered an order of removal for Mr. Medel.  *Doc. 7* at Ex. 7.

The next step in Mr. Medel's immigration proceedings was his appeal to the Bureau of Immigration Appeals ("BIA").  On May 21, 2010, or 24 days after the entry of the IJ's order of removal, he filed his Notice of Appeal, thus beginning the BIA appeals process.  On July 27, 2010, Mr. Medel filed this his federal habeas application pursuant to 28 U.S.C. § 2241.  *Doc. 1.*

Subsequently, Mr. Medel's BIA appeal was denied.  *FTR* at 1:34.[4]  After the BIA ruling, Petitioner filed an appeal with the Fifth Circuit which was also denied and Mr.

---

[3] Respondent contends that Petitioner's counsel asked for a continuance at the November 4, 2009 hearing.  *Doc. 7* at 2-3.  However, a review of the transcript does not clearly demonstrate such a request.  It appears that the IJ simply set the next hearing date for November 24, 2009.

[4] The Court learned of these subsequent developments from Mr. Medel's counsel during the status hearing held by the Court on December 2, 2010.  *See Doc. 12* (clerk's minutes).

Medel was deported back to Mexico on September 11, 2010.  *FTR* at 1:34, 1:54.

**Juan Delgado-Sanchez ("Mr. Delgado")**

Mr. Deglado, a Mexican national, is an alien who received lawful permanent resident status on November 29, 1989.  *Doc. 1* at 9; *Doc. 7*, Ex. 10.  In March, 2009, Mr. Delgado was convicted of transportation of a controlled substance under California Health and Safety Code § 11379(a), and was sentenced to six months incarceration and five years probation.  *Doc. 1* at 10.  Mr. Delgado completed his sentence on September 15, 2009.  *Id.* On that day, the United States Department of Homeland Security ("DHS") arrested Mr. Delgado and he was taken into Immigration and Customs Enforcement ("ICE") custody for immigration proceedings.  *Doc. 7*, Ex. 12 & 13.  Specifically, those proceedings would determine if Mr. Delgado was deportable as a criminal alien.  *Id.*  Because of ICE's charge that Mr. Delgado was deportable as a criminal alien, he was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) until he prevailed or a final order of deportation was issued. *Id.* at Ex. 10.

As with Mr. Medel, the first step in Mr. Delgado's immigration proceedings would be a hearing before an Immigration Judge ("IJ").  This hearing was originally scheduled for October 19, 2009, or 34 days after Delgado's arrest by immigration authorities.  *Doc. 7*, Ex. 15.  On October 19, 2009, Mr. Delgado's counsel requested a continuance of the hearing to enable her to research an issue regarding the availability of bond.  *Id.*  The IJ granted the

continuance and reset the removal hearing for October 28, 2009. *Id.* On October 28, 2009, Mr. Delgado's counsel requested an individual hearing so that Mr. Delgado could present a case for relief from removal pursuant to INA § 240A(a), which allows for cancellation of removal for certain lawful permanent residents.[5] *Id.; Doc. 1* at 11. The IJ proposed setting the individual hearing for April 1, 2010 and asked if "[a]ll parties agreed to the setting . . . ." *Id.* Mr. Delgado's counsel responded, "Yes, Your Honor." *Id.* At the April 1, 2010, hearing, the IJ denied Mr. Delgado's cancellation of removal application and ordered his removal to Mexico. *Doc. 1*, Ex. D. On April 19, 2010, or 18 days after the entry of the IJ's order of removal, he filed his Notice of Appeal, thus beginning the BIA appeals process. *Id.*, Ex. 17. On July 27, 2010, Mr. Delgado filed this federal habeas application pursuant to 28 U.S.C. § 2241. *Doc. 1.*

Subsequently, Mr. Delgado's BIA appeal was denied on August 18, 2010.[6] *FTR* at 1:48. Petitioner filed a Motion to Reconsider which was denied on September 30, 2010. *Id.* at 1:48-49. A notice of appeal was filed immediately thereafter to the Fifth Circuit. *Id.* at

---

[5] In order for an individual to be eligible to cancel their removal pursuant to INA § 240A(a), one must show: 1) he has been in the United States for seven years after lawful admission; 2) he has been for resident for at least five years; and 3) he has no aggravated felony convictions. *FTR* at 1:40-41. Relief under this provision is discretionary. *Id.*

[6] The Court learned of these subsequent developments from Mr. Delgado's counsel during the status hearing held by the Court on December 2, 2010. *See Doc. 12* (clerk's minutes).

1:49.  Petitioner Delgado requested a stay and additionally challenged his removal on the

merits.  *Id.*  The Fifth Circuit has not yet issued a decision on either matter.  *Id.*

On September 13, 2010, while this appellate process was continuing, Mr. Delgado

was transferred from the custody of ICE into the custody of the State of California.  *FTR* at

1:50.  This transfer occurred because California authorities had charged Mr. Delgado with

violating the terms of his probation on his transportation of a controlled substance

conviction.  *Id.*  Mr. Delgado is currently being held by state authorities in California.  *Id.*

**Current Status of Cases**

At the December 2nd hearing, counsel for Mr. Medel conceded that his deportation

to Mexico now renders his habeas application moot.  Thus, any relief sought by Mr. Medel

should be dismissed as moot.  *See Ferry v. Gonzales*, 457 F.3d 1117, 1132 (10th Cir. 2006)

(holding that challenge to detention without opportunity for bond was mooted by

deportation where petitioner did not seek monetary damages for loss of liberty or

consortium); *see also Abdala v. INS*, 488 F.3d 1061, 1064-65 (9th Cir. 2007) (collecting cases

where habeas claims were fully resolved and rendered moot by release from custody).

With regard to Mr. Delgado, however, the Court will still evaluate the merits of his claims.

The apprehension and detention of criminal aliens who have pending removal

decisions is governed by 8 U.S.C. § 1226.  Section 1226(c)(1)(B), instructs the Attorney

General to take into custody and detain any alien who is deportable by reason of having

committed any offense covered in section 8 U.S.C. § 1227(a)(2)(A)(ii), (A) (iii), (B), (C), or (D).   Deportable aliens must also be detained during the first ninety days after their removal orders become final, 8 U.S.C. § 1231(a)(2), and criminal aliens may be detained beyond that period.  8 U.S.C. § 1231(a) (6).

Here, there is not dispute that when this case was filed, Petitioner Delgado was being detained pursuant to § 1226(c).  Additionally, his detention continued under that statute while his appeal was pending before the BIA.  Of course, Mr. Delgado is not being detained pursuant to § 1226(c) at this time since he is currently in California being held by state authorities.   However, as soon as his criminal proceedings in California are completed, he will be returned to ICE custody who will hold him pursuant to  § 1226(c). Thus, Petitioner Delgado's claim is not moot because the wrong he complains of is capable, even arguably certain, of repetition. *R.W. Investment Company v. United States Forest Service*, 511 F.3d 1103, 1107 (10th Cir. 2007) (A case will not be dismissed on grounds of mootness if "the issue is deemed a wrong capable of repetition yet evading review. . . ."   The Court thus considers the arguments presented by both parties regarding Mr. Delgado's detention pursuant to § 1226(c) below.

**Legal Argument by Parties**

Petitioner[7] argues that § 1226(c) does not authorize his "prolonged detention" without a detention hearing. *Doc. 1* at 17. Petitioner points to no language in the statute to support such a restriction, but relies instead on the doctrine of constitutional avoidance. *Id*. at 17-18. Petitioner contends that, if the statute did permit prolonged detention without a hearing, it would violate the Due Process Clause. *Id.* Therefore, the Court should avoid this constitutional issue by construing the statute as limiting detentions under 8 U.S.C. § 1226(c) to "brief" detentions. *See e.g. Zadvyvas v. Davis*, 533 U.S. 678, 689 (2001) ("It is a cardinal principle of statutory interpretation . . . that when an Act of Congress raises a serious doubt as to its constitutionality, this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." (quotations and citations omitted)).

Respondent argues that Petitioner's claims are foreclosed by *Demore v. Kim*, 538 U.S. 510 (2003) in which the Supreme Court held that the no-bond provision of 8 U.S.C. § 1226(c) does not violate the Due Process Clause. *Doc. 7* at 11 (citing *Demore*). Respondent further argues that, even if *Demore* requires that detentions under § 1226(c) are subject to

---

[7] Because the Court recommends that claims against Mr. Medel are moot, the Court construes arguments made by the parties in their briefs only in reference to Mr. Delgado. Additionally, any reference made to "Petitioner" hereinafter refers solely to Mr. Delgado.

a reasonable time limit, Petitioner's detention is still constitutional under the circumstances. *Doc. 7* at 15-18.

**ANALYSIS**

Petitioner's arguments, therefore, hinge upon the assertion that, in his case, further detention without an individualized bond hearing would be a due process violation. This argument appears to be foreclosed by the Supreme Court's holding in *Demore*.

**Holding of *Demore v. Kim***

In *Demore v. Kim*, the Supreme Court held that mandatory detention of criminal aliens under 8 U.S.C. § 1226(c), during their removal proceedings is constitutional. 538 U.S. at 531. There, ICE brought removal proceedings against a legal permanent resident who had been convicted of burglary and petty theft. *Id.* at 513. Because of the nature of the person's convictions, he was subject to mandatory detention pursuant to § 1226(c) pending the outcome of his removal proceedings. *Id.* at 513-14. The petitioner argued that the statute's mandatory detention violated the Fifth Amendment's Due Process Clause. *Id.* at 514. He argued that such mandatory detention was unnecessary, and that the government could instead conduct "individualized bond hearings." *Id.* at 520 n. 5. The Court rejected that argument and "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process. As we said more than a century ago, deportation proceedings 'would be in vain if those accused could not be held in

10

custody pending the inquiry into their true character.'" *Id.* at 523 (*quoting Wong Wing v. United States*, 163 U.S. 228, 235 (1896)). Therefore, the Court upheld against a due process challenge the mandatory detention of individuals "during the limited period necessary for their removal proceedings." *Id.* at 526.

While *Demore* appears to dispose of Petitioner's due process claim, he argues that its holding is limited to cases in which the removal proceedings are relatively short. *Doc. 1* at 20-30. Petitioner's argument is based upon two portions of the *Demore* opinion. First, he points to the fact that, in justifying its holding, the Court noted that, based on then-current statistics, detention under § 1226(c) "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530. The Court observed that, while such detention would be unconstitutional if it were "'indefinite' and 'potentially permanent,'" (as was found to be the case in *Zadvydas*), detention under § 1226(c) was typically "of a much shorter duration." *Id.* at 528 (citing *Zadvydas*, 533 U.S. at 690-91). Petitioner also notes the Court's use of the description of § 1226(c) detention as "brief" in its holding. *Id.* at 513 ("We hold  that Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings.").

Secondly, Petitioner points to Justice Kennedy's concurring opinion.  Given that Justice Kennedy was an indispensable vote in the five-justice majority[8] in *Demore*, his concurring opinion carries considerable weight.  Justice Kennedy observed that, "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien [subject to mandatory detention under § 1226(c)] could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."  *Id.* at 532 (Kennedy, J., concurring).  He went on to say that "[w]ere there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."  *Id.*

The significant weakness with inferring a limitation on the *Demore* holding on these bases is that the Court's rationale for rejecting the due process challenge was focused on the purpose of the mandatory detention more than its length.  This focus can be seen most clearly in the Court's distinguishing of its prior opinion in *Zadvydas*.

In *Zadvydas*, the Court considered a due process challenge to detention of aliens

---

[8] In *Demore*, the Court dealt with two issues.  First, it considered whether courts had jurisdiction to review a detention issue under 8 U.S.C. § 1226.  Six justices held that courts did have such jurisdiction.  Next, it considered the due process challenge on which it split 5-4.

under 8 U.S.C. § 1231.  533 U.S. at 682.  Section 1231 provides that when an alien who has

been ordered removed is not in fact removed during the 90-day statutory "removal

period," that alien "may be detained beyond the removal period" at the discretion of the

Attorney General.  *Id.* at 682 (quoting 8 U.S.C. § 1231(a)(6)).  The Court held that the statute

contains an implicit limitation on the detention period reasonably necessary to bring about

removal because, without such a limitation, the statute would violate the Due Process

Clause.  *Id.* at 699.  Moreover, the Court recognized six months as the presumptive limit to

a reasonable duration of detention.  *Id.* at 701-02.

In *Demore*, the Court explained that *Zadvydas* did not control because it was:

> materially different from the present case in two respects.  First, in *Zadvydas*,
> the aliens challenging their detention following final orders of deportation
> were ones for whom removal was "no longer practically attainable."[9]  The
> Court thus held that the detention there did not serve its purported
> immigration purpose.  In so holding, the court rejected the Government's
> claim that, by detaining the aliens involved, it could prevent them from
> fleeing prior to their removal.  The court observed that where, as there,
> "detention's goal is no longer practically attainable, detention no longer bears
> a reasonable relation to the purpose for which the individual was
> committed."  In the present case, the statutory provision at issue [8 U.S.C. §
> 1226(c)] governs detention of deportable criminal aliens *pending their removal
> proceedings*.  Such a detention necessarily serves the purpose of preventing
> deportable criminal aliens from fleeing prior to or during their removal
> proceedings, thus increasing the chance that, if ordered removed, the aliens
> will be successfully removed . . . .  *Zadvydas* is materially different from the
> present case in a second respect as well.  While the period of detention at

---

[9]  In *Zadvydas*, both petitioners lacked a home country that would accept them
and had no prospect of that fact changing.  533 U.S. at 686.

issue in *Zadvydas* was "indefinite" and "potentially permanent," the detention here is of much shorter duration. *Zadvydas* distinguished the statutory provision it was there considering from § 1226 on these very grounds, noting that "post-removal-period detention, *unlike detention pending a determination of removability*, has no obvious termination point."

538 U.S. at 527-28 (emphasis in original but citations omitted).

The *Demore* majority distinguished *Zadvydas* on the ground that given removal was never going to happen, the proper purpose of the detention – to ensure removal – no longer applied. Additionally, the *Demore* majority stressed the importance to the due process calculus that a final removal order served as an "obvious termination point" of detention under § 1226(c). 538 U.S. at 529. While the Court did note that the *Demore* detention was "much shorter" than the *Zadvydas* detention, (*Demore*, 538 U.S. at 528), the focus of the opinion appears to be on the existence of a definite endpoint rather than the absolute length. Moreover, it is important to realize that the lengths of detention in *Zadvydas* at the time of the decision were much longer than the detention in the instant cases. *Zadvydas*, 533 U.S. at 683-86 (one petitioner had been in INS custody for seven-and-a-half years and the other for four years).

Therefore, there is a strong argument that *Demore* forecloses all due process challenges to the mandatory detention of individuals subject to § 1226(c) as long as there is no reason to doubt that, upon the conclusion of the removal proceedings and the subsequent appeals, the removal will be carried out. *See Pierre v. Weber*, 2010 WL 1373710

14

(D.N.J. Mar. 31, 2010); *Rodney v. Mukasey*, 2009 WL 427171 (M.D. Pa. Feb. 20, 2009)*; Hussain v. Gonzales*, 492 F. Supp.2d 1024, 1034 (E.D. Wis. 2007) (*Demore* "Court did not adopt a limit for the amount of time an alien awaiting completion of removal proceedings could be constitutionally detained"); *Irabor v. Gonzales*, 2006 WL 306320, *3 (W.D. La. Feb. 7, 2006) (*Demore* Court "did not suggest there were exceptions to its holding").  Here, Petitioner does not dispute that, if he does not prevail on appeal, ICE will be able to remove him to Mexico.  Thus, this qualification on the constitutionality of § 1226(c) is inapplicable here. The Court, however, need not reach such an absolute conclusion because, even if *Demore* is limited to "reasonable" lengths of detention, Petitioner's detention is reasonable at this time as discussed below.

**Analysis Assuming *Demore* is Limited**

        A number of courts have held that *Demore* is limited in some fashion.  Essentially, these courts have read *Demore* to permit mandatory detention under § 1226(c) only where the court concludes the continued detention is reasonable.  Petitioner urges this Court to adopt a strict rule that would require a bond hearing once the mandatory detention exceeds six months.  *Doc. 1* at 30-33.  This arbitrary limit is apparently based upon the limit established in *Zadvydas*.  *Id.*  However, as discussed above, *Zadvydas* is not applicable to the instant case because (1) it dealt with a post-final-removal-order detention, and (2) it dealt with a petitioner whom the government would likely never be able to deport. *See Soberanes*

15

*v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004) (noting *Zadvydas*' "focus on effectuation of removal"). Unsurprisingly, Petitioner has cited no case which imposes a six-month limit for mandatory detention under § 1226(c). *Cf. Alli v. Decker*, 644 F.Supp.2d 535, 542-43 (M.D.Pa. 2009) (varying circumstances of individual removal proceedings make a bright-line 6-month test inappropriate).

However, some courts have imposed a reasonableness limitation on such detention. A review of these cases, including all that were cited by Petitioner, reveals a diverse number of factors that should be considered to determine if, in a given case, the detention under § 1226(c) has become unreasonable. These factors include: 1) the length of detention; 2) the likelihood of removal; 3) the conduct of the petitioner and ICE during removal proceedings; and 4) the probable extent of future removal proceedings. Each factor is discussed below.

Length of Detention

Courts that have limited *Demore* to a "reasonable" length of detention looked first at the absolute time that the petitioner had been held in the custody of immigration authorities. Of course, given the importance of other factors, which will be discussed below, the absolute length of time is not determinative. Nonetheless, it is instructive that,

in cases cited by Petitioner[10] where courts have granted habeas relief from detention under

§ 1226(c), the length of detention has almost always exceeded the twelve months Petitioner

has been detained.[11]  *See Casas-Castrillon v. Department of Homeland Sec.,* 535 F.3d 942, 945

(9th Cir. 2008) (84 months); *see also Hussain v. Mukasey,* 510 F.3d 739, 740 (7th Cir.  2007) (30

months); *Tijani v. Willis,* 430 F.3d 1241, 1242 (9th Cir. 2005) (30 months); *Flores-Powell v.*

*Chadbourne,* 677 F.Supp.2d 455, 472 (D. Mass. 2010) (22 months); *Bourguignon v. MacDonald,*

667 F.Supp.2d 175, 177-78 (D. Mass. 2009) (27 months); *Mau v. Chertoff,* 549 F.Supp.2d 1247,

1252 (S.D. Cal. 2008) (40 months); *Nunez-Pimentel v. U.S. Dept. of Homeland Sec. Immigration*

*Customs Enforcement,* 2008 WL 2593806, *5 (M.D. Pa. Jun. 27, 2008) (38 months); *Wilks v.*

*DHS,* 2008 WL 4820654, *3 (M.D. Pa. Nov. 3, 2008) (30 months); *Madrane v. Hogan,* 520

F.Supp.2d 654, 666 (M.D. Pa. 2007) (37 months); *Alafyouny v. Chertoff,* 2006 WL 1581959, *16

(N.D. Tex. May 19, 2006) (24 months); *Diomande v. Wrona,* 2005 WL 3369498, *2 (E.D. Mich.

---

[10]  The Court has excluded from this review a few of the cases cited by Petitioner as follows: *Welch v. Ashcroft,* 293 F.3d 213 (4th Cir. 2002) (abrogation by *Demore* recognized in *Welch v. U.S,* 409 F.3d 646 n. 1 (4th Cir. 2005)); *Aguilar-Elizondo v. I.N.S.,* 2003 WL 21828792 (N.D. Tex. Feb. 18, 2003) (pre-*Demore* opinion vacated as moot by *Aguilar-Elizondo v. I.N.S.,* 2003 WL 21828794 (N.D. Tex. Mar. 11, 2003)); *Alli v. Decker,* 644 F.Supp.2d 535 (M.D. Pa. 2009) (opinion concludes that *Demore* is subject to "reasonable" limitation, but does not determine if the length of the detention of two petitioners - 9 and 20 months respectively - was reasonable).

[11] Petitioner was in ICE custody from September 15, 2009,  (*doc. 7,* Ex. 10), until September 13, 2010, (*FTR* at 1:50).

Dec. 12, 2005)[12] (21 months).  In the few instances where the time of detention was closer

to the detention length of Petitioner, the cases are significantly distinguishable because of

the impact of other factors as will be pointed out *infra*.  *See Ly v. Hansen,* 351 F.3d 263, 266

n. 1 (18 months detention, but "actual removal of Ly from the United States was never a

possibility during this process [because] Vietnam has not and does not accept deportees

. . . "); *Kambo v. Poppell*, 2007 WL 3051601, \*20 (W.D. Tex. Oct. 18, 2007) (12 months

detention, but petitioner was not likely deportable because IJ ruled in his favor on a factual

determination that would be reviewed under a clearly erroneous standard on appeal);

*Victor v. Mukasey*, 2008 WL 5061810, \*5 (M.D. Pa. Nov. 25, 2008) (16 months detention, but

length of detention was  squarely due to ICE's conduct, as petitioner prevailed in one

hearing and appeal but ICE brought a second case under a new theory of removal, lost

before the IJ, and appealed to the BIA once again); *Sengkeo v. Horgan,* 670 F.Supp.2d 116,

127-28 (D. Mass. 2009) (20 months detention, but only 50 days were a result of continuances

requested by petitioner).

Even a review of the above cases – which are restricted to those in which the court

(a) agreed that the *Demore* holding is limited and (b) held that the petitioner was entitled

---

[12] This case is cited by Petitioner as "*Singh v. Sepulveda,* 2005 U.S. Dist. LEXIS 33795, 2005 WL 3369498 (E.D. Mich. 2005)", (*doc. 1* at 16), however both the Westlaw and Lexis citations bring up the case *Diomande v. Wrona*.  The Court did locate *Singh v. Sepulveda*, 2008 WL 2242215, \*2 (N.D. Cal. May 29, 2008), where the petitioner was detained for 14 months.

to relief – supports the conclusion that a detention of 12 months, based solely on length, does not merit judicial intervention.  In fact, similar and longer lengths of § 1226(c) detention have often been found constitutional.  *See Aponte v. Holder,* __ F.Supp.2d __, 2010 WL 3547707 (W.D.N.Y. 2010) (39-month long detention reasonable); *Pierre,* 2010 WL 1373710 (19-month long detention constitutional); *Miller v. Shanahan,* 2010 WL 481002 (S.D.N.Y. Jan. 29, 2010) (29-month long detention constitutional); *Rodney*, 2009 WL 427171 (19-month long detention constitutional); *Prince v. Mukasey*, 593 F.Supp.2d 727 (M.D. Pa. 2008) (16-month long detention reasonable); *Hussain v. Gonzales*, 492 F. Supp.2d 1024 (E.D. Wis. 2007) (22-month long detention constitutional); *Jah v. Chertoff*, 2007 WL 2212856 (M.D. Pa. Jul. 31, 2007), aff'd by *Jah v. Attorney General of U.S.*, 258 F. App'x 394 (3d Cir. Dec. 12, 2007) (16-month long detention constitutional); *Ibeagwa v. Crawford*, 2007 WL 2702006 (D. Ariz. Sep. 14, 2007) (31-month long detention constitutional); *Tavares v. Myers*, 2006 WL 1644776 (D.N.J. Jun. 8, 2006), aff'd by *Tavares v. Attorney General USA*, 211 F. App'x 127 (3d Cir. Jan. 4, 2007) (18-month long detention constitutional).  Therefore, the length of detention factor weighs against a finding that, at this time, § 1226(c) detention is unconstitutional as applied to Petitioner.[13]

---

[13] Petitioner argues the analysis of the length of detention should include a comparison to the criminal sentence received for the crimes which are the basis of the removal proceedings.  Indeed, the *Ly* court mentioned in passing that the petitioner had served more time in immigration custody than in custody for his criminal conviction. *Ly*, 351 F.3d at 271.  However, this comment was but a small part of the *Ly* court's

Likelihood of Removal

The *Zadvydas* and *Demore* opinions suggest that the most important factor in determining the constitutionality of detention during immigration proceedings is whether the detention serves the ultimate purpose of "increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore,* 538 U.S. at 528. As Justice Kennedy explained in his concurring opinion, "Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire **whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.**" *Id.* at 532 (Kennedy, J., concurring) (emphasis added). Given this focus on purpose, courts have been particularly skeptical of longer pre-final-removal-order detention where it appears that the petitioner will not eventually be deported.

The Sixth Circuit's opinion in *Ly v. Hansen* is the quintessential example of such a case. In *Ly*, the Sixth Circuit upheld the district court's grant of habeas relief to a Vietnamese national who had been detained pursuant to §1226(c) for 18 months. 351 F.3d

---

analysis regarding the length of detention. More importantly, relying on such a comparison appears to contradict the Supreme Court's directive that immigration detention should only be concerned with ensuring an individual is able to be removed if so ordered. Permitting longer immigration detention because an individual previously received a long sentence in a criminal case would be to permit immigration detention for reasons that appear punitive in nature.

at 265.  Importantly, though Ly was subject to removal, actual removal was never a possibility while he was being detained.[14]  *Id.* at 266 n. 1.  Thus, the Sixth Circuit was dealing with true indefinite detention more along the lines of *Zadvydas*.  In fact, the *Ly* court explicitly distinguished the facts of *Demore* on that ground and thus relied heavily on *Zadvydas*.  *Id.* at 270 ("Th[is] case is distinguishable [from *Demore*] to the extent that Kim was a deportable alien for whom deportation, to South Korea, was a real possibility, and he could avail himself of such liberty at any time. That is not the case with Ly.").  As the *Ly* court reiterated, the "goal of pre-removal incarceration must be to ensure the ability of the government to make a final deportation."  *Id.* at 271.  If the petitioner cannot be deported at the conclusion of the proceedings, then detention cannot serve that goal.

Petitioner has not presented any evidence that the government will be prevented from deporting him to Mexico, a country which regularly and routinely receives its deported and removed citizens, once their appeals are concluded.  *Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008) (rejecting a petitioner's challenge to his three year § 1226(a)[15] detention because "repatriations to Prieto-Romero's country of origin, Mexico, are

---

[14] Vietnam did not accept deportees when *Ly* was decided as there was no repatriation agreement between the United States and Vietnam at that time.  *Id.* at 266 n. 1.

[15] 8 U.S.C. § 1226(a) grants the Attorney General discretionary authority to detain an alien "pending a decision on whether the alien is to be removed from the United States."

routine and that the government stands ready to remove Prieto-Romero as soon as judicial review is complete"). Moreover, Petitioner has not presented any other reason to conclude that his deportation is highly unlikely. *See Tijani*, 430 F.3d at 1247 (Tashima, concurring) ("Tijani almost certainly has a winning argument that he is not removable for having committed an aggravated felony"); *Kambo*, 2007 WL 3051601 at *20 (12 months detention, but petitioner was not likely deportable because IJ ruled in his favor on a factual determination which would be reviewed on clearly erroneous standard on appeal); *Victor*, 2008 WL 5061810 at * 5 (16 months detention, but length of detention was squarely due to ICE's conduct, as petitioner prevailed in one hearing and appeal but ICE brought a second case under a new theory of removal, lost before the IJ, and appealed to the BIA once again). Under these circumstances, there is no reason to doubt that the purpose of Petitioner's detention is to ensure that, "if ordered removed, [he] will be successfully removed." *Demore*, 538 U.S. at 528. Therefore, the likelihood of removal factor weighs against a finding that, at this time, § 1226(c) detention is unconstitutional as applied to Petitioner.

<u>Conduct of Petitioner and ICE During Removal Proceedings</u>

Here, Petitioner's detention has extended beyond the average length referenced in *Demore*. 538 U.S. at 530 (noting that the average case in which alien appeals to BIA takes about five months). When faced with delays in the removal process, courts look to the conduct of both the petitioner and the government to determine if the petitioner's

22

continued detention has become unreasonable.  However, there appears to be a dispute between these courts about how to view delays caused by a petitioner in good faith.  A few courts have asked whether the alien has used "dilatory tactics" in obtaining delays of the removal proceedings.  *Ly*, 351 F.3d at 272; *see also Alli*, 644 F.Supp.2d at 545; *Bourguignon*, 667 F.Supp.2d at 183-84; *Nunez*, 2008 WL 2593806 at *5; *cf. Flores*, 677 F.Supp.2d at 471-72 (while the court considered whether the alien was dilatory, it also reviewed government delays on a "fault" basis).  If in fact an alien is held responsible only for delays caused by dilatory tactics, it follows that good faith continuances sought by the alien in pursuit of some relief would be held entirely against the government.  *See Black's Law Dictionary* 411 (5th ed. 1979) (defining "dilatory" as "intended to cause delay or to gain time or to put off a decision").

Most courts, however, are willing to discount delays in the immigration proceedings that were caused by the petitioner, even those in good faith, when determining whether a petitioner's detention has become unreasonable.  *See Miller*, 2010 WL 481002 at *3 (S.D.N.Y. Jan. 29, 2010) (prolonged detention constitutional because "directly attributable to [petitioner's] efforts to contest his removal"); *Adler v. United States Department of Homeland Security*, 2009 WL 3029328 *2 (S.D.N.Y. Sept. 22, 2009) ("Although it is [petitioner's] right to seek relief from deportation, the delays caused by his motions should not be attributable to the government"); *Ovchinnikov v. Clark*, 543 F.Supp.2d 1265, 1266

(W.D. Wash. 2008) (holding that "[c]ontinuances granted solely for petitioner's benefit" would not count against the government when considering the constitutionality of detention under § 1226(c)); *Sengkeo*, 670 F.Supp.2d at 128 ("To be sure, detainee responsibility for delayed proceedings should be taken into account when assessing the reasonableness of a period of detention"); *Prince*, 593 F.Supp.2d at 735-36 ("While this Court would not, in any way, even infer that petitioners should not file appropriate documents challenging their detention or the reasons for detention, petitioners such as Prince must know that their own conduct has to be included in determining whether or not a 'reasonable time' was exercised by the authorities in determining the proper response to any assertions made either by Petitioner or the Government."); *Madrane*, 520 F.Supp.2d at 666 ("The Court is mindful that Petitioner has, to some degree, contributed to the length of time it has taken to adjudicate his challenges to Respondent's attempts to have him removed. . . . Petitioner's scheduled merits hearing was continued on several occasions, each time at Petitioner's request.  Nevertheless, these delays, which appear to have extended the process for approximately six months, make up only a fraction of time [thirty-seven months] Petitioner has been held in custody during his removal proceedings . . . ."); *Hussain*, 492 F. Supp.2d at 1035 (30-month detention where delay primarily due to ICE appeal of IJ decision was reasonable because ICE appeal had some merit).  In fact, even the *Ly* court, which is usually cited for the proposition that only "dilatory" delays are

24

discounted, recognized that it was relevant that the petitioner was "at least partially responsible for the length of the proceedings.  Ly applied for cancellation of removal and for change of status, and was responsible for at least one rescheduled hearing, due to the late filing of briefs by Ly's counsel with the immigration judge."  351 F.3d at 272.

To the extent that some courts are unwilling to factor into the reasonableness determination whether the petitioner caused some of the delay by seeking continuances or pursuing relief, such an approach appears to contradict the Supreme Court's analysis in *Demore*.  There, when discussing the length of time involving an appeal to the BIA of five months, the Court noted that "Respondent was detained for somewhat longer than the average – spending six months in INS custody prior to the District Court's order granting habeas relief, but respondent himself had requested a continuance of his removal hearing."  *Demore*, 538 U.S. at 530-31.  There was no hint that the request for the continuance was "dilatory."  In fact, the Court recognized that the continuance was "to obtain documents relevant to his . . . application."  *Id*. at 531 n.15.  Therefore, the Court had no trouble excluding a good faith continuance sought by the petitioner from the detention time relevant to its holding.

Thus, when courts consider how delays should evaluated, it appears there are four possible categories for removal proceedings: (1) delays caused by a petitioner's dilatory tactics; (2) delays caused by a petitioner's good faith attempt to obtain relief from removal;

(3) delays caused by ICE in a good faith attempt to secure removal (*e.g.* good faith appeals of an IJ ruling against removal); or (4) delays caused by ICE or the IJ where fault or bad faith is apparent.  A review of the caselaw and commonsense leads this Court to the conclusion that the weight to be applied to a particular delay should be dictated by the category into which it falls.

**Delays caused by Petitioner's dilatory tactics:**  Such delays ought to be fully excluded from the length of a petitioner's detention when considering whether the detention is reasonable.  *Ly*, 351 F.3d at 272; *see also Bourguignon*, 667 F.Supp.2d at 183-84 (citing to precedent where the court took into account petitioner's "own procuring of stays incident to his legal challenges of removal." (quotation omitted)); *Nunez*, 2008 WL 2593806 at *5 ("Although petitioner may be responsible for seeking relief from removal, he is not responsible for the amount of time that such determinations may take");  *Flores*, 677 F.Supp.2d at 471-72 (while court considered whether alien was dilatory, it also reviewed government delays on a "fault" basis).  In the instant case, there is no suggestion that Petitioner used dilatory tactics to delay his proceedings.

**Delays caused by Petitioner in good faith**: As discussed above, these delays ought to be excluded to a limited degree.  *See Demore*, 538 U.S. at 530-31; *Sengkeo*, 670 F.Supp.2d at 128; *Prince*, 593 F.Supp.2d at 735-36; *Madrane*, 520 F.Supp.2d at 666.  However, not excluding such delays entirely recognizes that petitions from relief are a natural part of the

process and that often the resolution of a petition is in the hands of the executive branch.

In Petitioner's case, he only explicitly requested one continuance of 9 days.  The longest delay was from his request for an individualized hearing on October 28, 2009, to when it was set on April 1, 2010.  While there is no evidence that he requested that setting, his counsel did explicitly agree to that date so Petitioner could seek relief from removal.  Under these circumstances, it is appropriate to exclude one-third (≈2 months) of this delay for the purposes of a reasonableness calculation.

**Delays caused by ICE in a good faith attempt to secure removal:**  Courts who have limited the *Demore* holding have generally not excluded these delays from the consideration of reasonableness.  *See Sengkeo,* 670 F.Supp.2d at 128; *Prince,* 593 F.Supp.2d at 735-36; *Madrane,* 520 F.Supp.2d at 666; *but cf. Hussain,* 492 F. Supp.2d at 1035.  In the instant case, none of the continuances were at the request of ICE.  Additionally, Petitioner, not ICE, appealed the IJ and BIA's decisions.  Therefore, there are no delays which fall into this category.

**Delays caused by ICE or the IJ where fault or bad faith is apparent:** Unsurprisingly, delays which fall into this category are held strictly against the government.  *Ly,* 351 F.3d at 265-66, 272 (noting that delay in ruling from IJ on removal was exceptional where hearing was held in April and IJ did not rule until October); *Bourguignon* 667 F.Supp.2d at 183 n. 11 (criticizing government for seeking extension of time to file briefs

due in BIA appeal); *Flores*, 677 F.Supp.2d at 473 ("[A]pproximately seven months of delay are attributable to the Immigration Court's failure to properly document the proceeding."); *Nunez*, 2008 WL 2593806 at *5 ("Significantly, the length of detention is largely attributable to ICE in that the matter was remanded from our court of appeals because the administrative courts applied the incorrect legal standard in evaluating petitioner's CAT claim."); *Victor*, 2008 WL 5061810 at * 5 (implication of bad faith where petitioner prevailed before IJ and on government's appeal to BIA, and then government instituted new basis for removal which was rejected by IJ and government again appealed). In fact, delays which fall into this category are rightfully magnified by courts when considering whether a particular length of detention is reasonable. *See id.*

Notably, Petitioner's case does not include any delay as seen in the cases cited herein: no delay in IJ ruling after hearing; no requested extensions by ICE for briefing; no procedural errors which led to delay; and no changing of ICE's case for removal due to unfavorable rulings. Accordingly, under the circumstances of Petitioner's case, there is no delay which falls into this category.

In summary, the only delay in the instant case falls into the category of "delays caused by Petitioner's good faith attempts to avoid removal." As described above, the Court will discount these delays to some degree when evaluating the reasonableness of the length of their detention. Specifically, once the portion of delays for which Petitioner

should be held accountable is discounted from his length of detention, the Court is left with holding immigration authorities responsible for 10 months of his § 1226(c) detention.[16]  As the case law discussed above dictates, this amount of detention has not become "unreasonable."  *See supra* pp. 16-19.  Thus, the conduct of the parties factor weighs against a finding that, at this time, § 1226(c) detention is unconstitutional as applied to Petitioner.

<u>Probable Extent of Future Removal Proceedings</u>

In addition to considering the length a petitioner has already been in custody, courts have also considered where a petitioner is in the removal proceeding process and what lies ahead.  *See e.g., Nunez*, 2008 WL 2593806 at *4-5.  In the instant case, Petitioner' appeal is currently pending before the Fifth Circuit.  Petitioner's case was pending before the BIA for four months.  *Doc. 17*, Ex. 17 (Appeal was filed on April 19, 2010); *FTR* at 1:48 (Appeal was denied on August 18, 2010).  This is the exact average time for an appeal before the BIA referenced by the Supreme Court in *Demore*.  *See* 538 U.S. at 529.

Petitioner, however, appears to argue that his actual removal is not reasonably foreseeable because there is no way to predict how long it will take before his removal challenge will finally be resolved.  *Doc. 9* at 3.  Currently, that depends on how long the Fifth Circuit takes to render a decision in his case.  However,  a review of *Demore* leads to

---

[16] 12 months minus 2 months (one-third of delay from stipulating to delayed individualized hearing).  *See supra* pp. 22-25.

the conclusion that, in the ordinary case, the delay necessitated by a judicial appeal after review by the BIA should not be considered when determining if there has been "unreasonable" delay. *See e.g. Aponte v. Holder*, __ F.Supp.2d __, 2010 WL 3547707 (W.D.N.Y. 2010) (36-month delay while case pending before circuit court not held against government because the appeal was filed by petitioner); *Ibeagwa v. Crawford*, 2007 WL 2702006, *3 (D. Ariz. Sep. 14, 2007) (additional 19 months of detention resulting from appeal to circuit court not held against government because court did not believe government was unreasonably delaying the appellate proceedings).

First, when deciding whether § 1226(c) was constitutional, the *Demore* Court completely omitted any discussion of the length of judicial review from its discussion of the length of average removal proceeding. The Court discussed the average time before an IJ decision (1.5 months) and the average time for a BIA appeal (4 months.) *Demore*, 538 U.S. at 530-31. From those two time periods, the Court concluded that detention under § 1226(c) was usually relatively short. *Id.* The Court, however, must have been aware that, when the BIA affirms an IJ's order of removal, the individual would have the right to appeal to a circuit court. *See* 8 U.S.C. § 1252(b). And, certainly, the Court was aware that appeals before the circuit courts take a significant amount of time. In fact, the average time from filing a notice of appeal to disposition before the circuit courts of appeal is more than 12 months. *See* "2009 Federal Court Management Statistics," Annual Report of the Director,

30

Administrative Office of the United States Courts.  If the Court considered the time for judicial appeal to be relevant in determining whether § 1226(c) detention was constitutional, it would have addressed this considerable amount of time which could come into play in any case where the alien chose to take such an appeal.  Its omission from the Court's analysis is a strong indication that such time would not ordinarily be considered on the issue of the constitutionality of § 1226(c) detention.

Second, the *Demore* Court did address the petitioner's argument that "the length of detention required to appeal may deter aliens from exercising their right to do so," saying, "the legal system . . . is replete with situations requiring the making of difficult judgments as to which course to follow,' and even in the criminal context, there is no constitutional prohibition against requiring parties to make such choices."  *Demore*, 538 U.S. at 530 n. 13 (quotation and citation omitted).  On this point, the Court also notes the Tenth Circuit's opinion in *Soberanes v. Comfort*, 388 F.3d 1305 (10th Cir. 2004).  In *Soberanes*, the Tenth Circuit found the detention of more than two years pending judicial review of a final removal order "neither indefinite nor potentially permanent like the detention held improper in *Zadvydas*" but rather, "directly associated with a judicial review process that has a definite and evidently impending termination point" which was "more akin to detention during the administrative review process" upheld in *Demore*.  *Id.* at 1311.

So, from the discussion and lack thereof in *Demore*, along with the reasoning of

*Soberanes*, this Court concludes that time spent on judicial appeal should not ordinarily be considered when determining whether § 1226(c) detention is reasonable.[17] There is nothing in Mr. Delgado's case which would justify deviating from this general rule. In fact, applying this rule to the instant case is particularly appropriate given the speed in which the Fifth Circuit Court of Appeals ruled on Petitioner Leon's appeal.[18]

## CONCLUSION

In *Demore*, the Supreme Court rejected the argument that § 1226(c) detention is unconstitutional. Assuming time on spent on judicial appeal should not be factored into the reasonable detention equation, Petitioner's removal proceedings and consequential § 1226(c) detention have lasted 12 months. Accounting for the delays caused by Petitioner, he has been in § 1226(c) detention for a total of 10 months. This length of time is not even twice the averages discussed in *Demore*. Even assuming *Demore* is limited to cases where detention is not "unreasonably" long, the length of Petitioner's detention has not crossed that line. This conclusion is based upon a number of factors that courts have looked to

---

[17] Nonetheless, some cases may fall outside the ordinary. For instance, in *Nunez-Pimentel*, holding the time spent on judicial appeal against the government was particularly appropriate because "the matter was remanded from [the] court of appeals because the administrative courts applied the incorrect legal standard in evaluating petitioner's CAT claim." 2008 WL 2593806 at *5. However, the Court has no reason to predict that such an error has been made in Petitioner's cases.

[18] Moreover, Mr. Delgado's counsel anticipates a ruling from the Fifth Circuit Court of Appeals very shortly. *FTR* at 1:49.

when making this difficult determination.  First, Petitioner is not facing an indefinite detention because he will either successfully fight removal and be released or lose and be removed to Mexico.  Thus detention is still serving its immigration purpose as described in *Demore*.  Second, there is no evidence that ICE has negligently or improperly delayed the administrative process.  Third, the Petitioner's case is currently pending before the Fifth Circuit so his removal proceedings are nearing the end.  Each of these factors, as described in detail *supra*, point in favor of a finding that their current detention under § 1226(c) is constitutional.

Of course, circumstances may change.  The appeal before the Fifth Circuit may drag on too long.  The Fifth Circuit could remand to the BIA or IJ for more hearings.  The outcome of that result could further be appealed and reviewed.  Each of these possibilities could change the calculus of this determination.  *See Ibeagwa*, 2007 WL 2702006 at *3 ("Although the Court does not presently believe that habeas relief can be granted, a remand and further proceedings before the Immigration Judge or the Bureau of Immigration Appeals could trigger new concerns concerning the expeditiousness of the removal proceedings . . . ").  Consequently, I recommend granting the Motion to Dismiss and dismissing the Petition without prejudice which would enable a future habeas petition should the circumstances warrant.

**Wherefore,**

**IT IS HEREBY RECOMMENDED THAT:**

(1)   Respondent's Motion to Dismiss (*Doc. 7*), be granted against Mr. Medel because his application is now moot and granted against Mr. Delgado because his §1226(c) detention thus far has been reasonable; and

(2)   Petitioners' applications for habeas relief pursuant to §2241 be dismissed without prejudice at this time.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

UNITED STATES MAGISTRATE JUDGE

34